UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SEAN J. FLOYD ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | Nos. 1:23-cv-00378-NT |
| ) | 1:23-cv-00379-NT |
| WALDO COUNTY SHERIFF'S ) | |
| DEPARTMENT et al., ) | |
| ) | |
| **Defendants** ) | |

### RECOMMENDED DISMISSAL

Because I granted Sean J. Floyd's applications to proceed *in forma pauperis*, his complaints are now before me for preliminary review in accordance with 28 U.S.C. § 1915(e)(2)(B). For the reasons that follow, I recommend that the Court dismiss Floyd's complaints.

### I. Legal Standard

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, is designed to ensure meaningful access to federal courts for persons unable to pay the costs of bringing an action. *See Neitzke v. Williams*, 490 U.S. 319, 324 (1989). When a party proceeds *in forma pauperis*, however, a court must "dismiss the case at any time if" it determines that the action "is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Dismissals under section 1915 are often made on the court's own initiative "prior to the issuance of process, so as to

1

spare prospective defendants the inconvenience and expense of answering" meritless complaints. *Neitzke*, 490 U.S. at 324.

When considering whether a complaint states a claim for which relief may be granted, the court must accept the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim when it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). An unrepresented plaintiff's complaint must be read liberally in this regard, *see Donovan v. Maine*, 276 F.3d 87, 94 (1st Cir. 2002), but must still contain "the crucial detail of who, what, when, where, and how" in order to provide fair notice of what the claims are and the grounds upon which they rest, *Byrne v. Maryland*, No. 1:20-cv-00036-GZS, 2020 WL 1317731, at *5 (D. Me. Mar. 20, 2020) (rec. dec.), *aff'd*, 2020 WL 2202441 (D. Me. May 6, 2020).

## II. Allegations

In rambling and sometimes difficult to follow complaints, Floyd makes the following allegations.

Floyd was fired from his job at Swan Lake Grocery (SLG) in August 2018. *See* 23-378 Complaint at 8. The day after his termination, Floyd posted videos about SLG online and stood in its parking lot holding a sign about workplace harassment, unfair termination, and unsafe food. *See id.* While Floyd was in the parking lot, Waldo County Sheriff's deputies served him a no trespass notice from SLG, and he agreed to leave. *See id.*

2

Floyd recommenced his picketing on public land near SLG a few days later. *See id.* at 9. While he was protesting, family members of SLG's owners Debora and Robert Newcomb confronted Floyd and verbally accosted him. *See id.* at 8-9. A Waldo County Sheriff's deputy also questioned Floyd and warned him that he would be held liable if his protest distracted nearby drivers. *See id.* at 9-10.

The encounters between Floyd, various people associated with SLG, and law enforcement continued over the next few days as he stood on public land near SLG. *See id.* at 10-19. The Waldo County Sheriff's Department declined to investigate Floyd's complaints about various individuals who threatened him during his protests and threw objects from their cars at him while he was on his own property. *See id.*

Floyd was eventually arrested for terrorizing. *See id.* at 13. In October 2018, Floyd was indicted for felony terrorizing, a charge to which he ultimately pleaded nolo contendere. *See id.* at 18; 23-379 Complaint at 11. He was sentenced to one day in jail and one year of probation. *See* 23-379 Complaint at 11.

Near the end of his probation, Floyd resumed protesting SLG with a sign about unsafe food and health code violations. *See id.* at 11-12. Before doing so, he contacted his probation officer, the Waldo County District Attorney's Office, and the Waldo County Sheriff's Department in an attempt to make sure he was not violating the terms of his probation. *See id.*

While Floyd was protesting, Debora Newcomb told him that he was not supposed to be harassing customers and that he needed to leave. *See id.* at 12. When Floyd returned to protest the next day, he had a similar confrontation with Debora

3

during which a car narrowly missed hitting him and scraped the body camera he was wearing. *See id.* at 12-13. The Waldo County Sheriff's Department declined to investigate the incident in a meaningful way. *See id.* at 13-14.

Shortly thereafter, Waldo County Sheriff's deputies served Floyd with another no trespass notice from SLG and a protection from harassment order prohibiting him from coming within one hundred yards SLG. *See id.* at 14-15. Floyd ceased his in person protests but continued to display disparaging signs on his own property and post videos online. *See id.* at 16. He also contacted the Maine State Police, the Waldo County District Attorney's Office, and the Waldo County Sheriff's Department to clarify the boundaries of the protection order. *See id.* at 16-17.

Floyd was eventually arrested for telephone harassment and later for violating his bail conditions. *See id.* at 17-19. He ultimately entered Alford pleas to three criminal charges. *See id.* at 26.

### III. Discussion

In his complaint, Floyd brings 42 U.S.C. § 1983 claims for violations of his First, Second, Fifth, and Fourteenth Amendment rights. *See* 23-378 Complaint at 3; 23-379 Complaint at 3; *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999) ("To state a claim under section 1983, a plaintiff must allege two elements: [(1)] that the conduct complained of has been committed under color of state law, and [(2)]

that this conduct worked a denial of rights secured by the Constitution or laws of the United States.").[1] He names the following individuals and entities as defendants:

1. Waldo County Sheriff's Department (WCSD)
2. Darrin Moody, Corporal, WCSD
3. Daniel Perez, Deputy, WCSD
4. Jordan Tozier, School Resource Officer, WCSD
5. Cody Laite, Sergeant, WCSD
6. Casey Ashey, Deputy, WCSD
7. Joshua Staples, Deputy, WCSD
8. Geoffrey Trafton, Former Sheriff, WCSD
9. Maine Department of Corrections
10. Lori Lama, Probation Officer
11. Waldo County District Attorney's Office
12. William Entwisle, Waldo County District Attorney's Office
13. Jonah O'Roak, Sergeant, Maine State Police
14. Einar Mattson, Trooper, Maine State Police
15. Hartwell Dowling, Program Manager, Maine Behavioral Health
16. Clint Towle, Counselor, Maine Behavioral Health
17. Theodore Logan, Psychiatrist, Maine Behavioral Health
18. Robert Newcomb, Owner, SLG

---

[1] Floyd also cites criminal laws in his complaints, but he has no authority to enforce those laws. *See Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (noting that "a private citizen" generally "has no authority to initiate a federal criminal prosecution").

   19. Debora Newcomb, Owner, SLG

23-378 Complaint at 2-3, 7; 23-379 Complaint at 2-3, 7-10.

Floyd's claims against the Maine Department of Corrections, the Maine State Police[2], and the Waldo County District Attorney's Office are subject to dismissal because those entities are immune from suit under the doctrine of sovereign immunity. *See Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 97 (1st Cir. 2009) ("States and their agencies are entitled to sovereign immunity regardless of the relief sought." (cleaned up)); *Cataldo v. U.S. Dep't of Justice*, No. 99-264-B-C, 2000 WL 760960, at *2 (D. Me. May 15, 2000) (categorizing the Penobscot County District Attorney's Office as a "state defendant[]" and dismissing claims against the Office for monetary relief under section 1983 on the grounds of Eleventh Amendment immunity).

Floyd's claims against the Waldo County Sheriff's Department are also subject to dismissal. As a department within a municipality, the Sheriff's Department cannot be the subject of a section 1983 suit. *See Henschel v. Worcester Police Dep't*, 445 F.2d 624, 624 (1st Cir. 1971) (explaining that a municipal police department is not a suable entity because it is the municipality that will pay any judgment). Even construing the complaint liberally and reading in Waldo County itself as the defendant, Floyd's claims would fail because he does not cogently allege that his rights were violated because of a municipal policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under

---

[2] Floyd did not name the Maine State Police as a defendant but sues two State Police officers in their official capacity. *See* 23-379 Complaint at 8-9; *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." (cleaned up)).

§ 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as entity is responsible under § 1983.").[3]

Floyd's claims against Attorney William Entwistle of the Waldo County District Attorney's Office are barred by the doctrine of prosecutorial immunity. *See Imbler v. Pachtman*, 424 U.S. 409, 427 (1976) (holding that prosecutors are immune from liability under section 1983).

Floyd's claims against the Maine Behavioral Health Defendants—Hartwell Dowling, Clint Towle, and Theodore Logan—which arise from their treatment of him pursuant to the terms of his probation, fail because they were not acting under color of state law. *Cf. Ouellette v. Kennebec Behav. Health*, No. 2:14-cv-00427-GZS, 2015 WL 413883, at *3 (D. Me. Jan. 30, 2015) ("[T]he mere fact that Defendants provided the services as part of a state program does not transform Defendants into state actors for purposes of the federal civil rights statute."). Likewise, Floyd's allegations against Debora and Robert Newcomb, the owners of SLG, fail because he does not cogently allege that they were acting under color of state law.

That leaves only Floyd's claims against the individual law enforcement officers in their individual capacities. Even with a liberal and careful reading of Floyd's lengthy allegations in both of his complaints, I am unable to discern any plausible constitutional violation that would support a section 1983 claim against any of the individual law enforcement officers. Accordingly, those claims should be dismissed.

---

[3] Floyd's claims against the various law enforcement officers in their official capacity fail for the same reasons his claims fail against the entities.

7

*See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that a complaint must contain "enough facts to state a claim to relief that is plausible on its face" and that complaints that fail to cross "the line from conceivable to plausible . . . must be dismissed").

## IV. Conclusion

For the foregoing reasons, I recommend that the Court **DISMISS** Floyd's complaints pursuant to 28 U.S.C. § 1915(e)(2)(B).

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: May 10, 2024

/s/ Karen Frink Wolf
United States Magistrate Judge